Case No. 24-3006 United States of America v. Peter K. Navarro Appellant, Mr. Branford A. Pellant Good afternoon. May it please the court. Appellant Peter Navarro, having served his sentence and returned to public service, we're here on his behalf to raise what we think are important issues representing the first time that the 1857 Congressional Contempt Statute has been used to prosecute a senior White House aide for contempt of Congress. Since at least 1983, in the U.S. House of Representatives, the Department of Justice has consistently declined to use the criminal statute to prosecute any executive official in cases in which presidential privilege has been implicated. The courts in this circuit, at both the appellate level and the district court level, have consistently encouraged, yea, admonished both the legislative and executive branches to attempt to resolve these disputes between them over privilege without court intervention. Most preliminarily in U.S. v. AT&T, where they admonished each branch to take cognizance of an implicit constitutional mandate to seek optimal accommodation. But Mr. Navarro never took advantage of that particular process, is that correct? Well, he tried. How so? You have to show up first, right? No, he informed the committee staff that he was bound, he thought he was bound by privilege. But that was before receiving the actual documents or knowing what the testimony was going to be about and that it might have covered broader than what his actual communications or relationships or job duties were with the White House? Well, based on his instructions or what he believed were his instructions from the president, he felt he was duty bound to assert the privilege from the beginning as other people in the White House had done. And when you say from the beginning, are you talking about when the president made more of an express statement during COVID-19 or the beginning of perhaps his term with the president? Yeah, that's one of the things that we would say at least is circumstantial evidence of a claim of privilege. Now, we understand Judge Maida rejected that and said we had to have a more formal and personal assertion. But certainly, I think it's fair to say that this president has aggressively and categorically, as the McGann case held, asserted executive privilege. But don't most privileges or immunity essentially require just kind of a case-specific circumstance so that you know what's before court? For example, an attorney-client privilege, you wouldn't just have blanket privilege. The court might take under consideration in camera what the documents are to determine if you're fairly asserting it. But there's something before the court, and there's some authority from the respective privilege holder with respect to having the privilege. Yes, but here, of course, we never got before a court to parse the scope of the privilege. The accommodation never occurred, and the committee decided to refer. You say accommodation didn't occur, but a person in responding to a subpoena should show up, and then you have the ability to assert whatever you believe is appropriate. That has never been the Department of Justice's position, at least with respect to testimonial privilege. The OLC opinion from July 2014 explained that that puts the witness in an untenable, coercive position. Didn't Dr. Navarro acknowledge in the district court that a former official serving a former president, the testimonial immunity would at most be qualified, and therefore, there wasn't this blanket entitlement not to show up? I thought we just don't even have that immunity as described in the OLC opinion that you referenced. I think what we would say there, Your Honor, is I think in fairness, U.S. v. Trump changed all that because it sealed off preclusive Article II powers from even criminal liability. Not for anybody below the president, only for the president. Well, that's not clear. Well, if it's not clear, you can't rest on it as a reason not to accommodate, not to show up, not to communicate over non-presidential communication aspects of the information. No one had determined yet which was non-presidential. How could they? In cases like the EPA case, the individual who's been subpoenaed provides documents that can be reviewed by someone with authority in the White House. The decision is made, okay, all of these are okay to be released, and here are the ones with respect to which we're privileged because they involve presidential communications. That is the burden of the recipient of the subpoena to cooperate with the accommodation process that you emphasize, so centrally in your brief. But if the deponent doesn't, or the recipient of the subpoena doesn't even do that, it's a little bit hard to see what accommodation could go forward. I mean, the staff said to Dr. Navarro, you know, we know there's a lot of information here that's outside of your communications with the president or advising the president, and so even assuming you have the claim that you have identified, we need to go forward with that, and he doesn't respond to that. The question would be there, though, who can make that decision? Can the Congress unilaterally make that decision? It's an accommodation process, as you mentioned, back and forth, and he was unwilling to engage in that. Well, he did explain to the committee staff that he was directing them to the White House counsel. He's not a lawyer, and he said, my hands are tied. He needs to go to the White House counsel. That notion that they're going to do that, that they're going to do the work for him. They did it in other cases. He's not the only person who was subject to subpoena by the committee, and there were other witnesses who were subpoenaed, who didn't show up, who didn't produce documents, and there was a back and forth, and they were referred for contempt, and the Justice Department decided not to prosecute them, and so I don't know how the balancing can occur without a representative of the president being involved or his lawyer being involved. Do we have anything in the record about whether in those other cases the committee reached out to White House counsel or White House counsel reached out to the committee? Did anybody in the White House try to reach out to the committee? I'm not aware of that, although I was counsel in one of the other cases, and I can tell you we had lengthy back and forth between ourselves as lawyers and the committee, which didn't result in an accommodation and did result in a referral, but not a prosecution. Turning to the... David, on district court, you conceded, and I just want to make sure I have this right, a couple of times, that privilege has to be invoked in each case, right? When they get a subpoena, there has to be a privilege determination for that subpoena, right? I mean, that was Judge Maida's view, was that the... There were concessions by you. Well... That you agreed with that. The position we took in front of Judge Maida was that there was enough other evidence... 1109, 1175, you conceded it has to be subpoena-specific invocation of privilege, it can't be blanket. Yes, and we would point... I'm just making sure you've... It sounded like you were now backtracking from that. Well, I won't backtrack. I'll say there was other evidence in the record. That doesn't... That's got nothing to do with my question as to whether you agreed, your litigation position in district court was that the invocation of executive privilege has to be subpoena-specific. That was our position in the district court. And it still is here?  Okay. And just to piggyback on that, would that not be a consultation with the president to then exert it in that particular circumstance? Well, our position in the evidentiary hearing, which the judge granted for the first time that I'm aware of in any of these cases, our position in the evidentiary hearing was that he had had a conversation with the president, that the counsel to the committee had made statements about, come on down, we'll work around the privilege. He received a letter from President Biden's White House counsel, Jonathan Sue, who seemed to infer that they were aware that a claim of privilege had been made. And so there were other things in the record to suggest... But did Judge Maida find that there were not time parameters? They were not sufficient. Judge Maida's position was you need a formal and personal invocation of the privilege. And while what we submitted was sufficient to get us to an evidentiary hearing, or provided it was not sufficient for him to find that privilege had been invoked. I mean, it is the president's privilege. It's a privilege that belongs to the president, correct? Yes. It's the president's to invoke or not, right? The president can decide to invoke it or not in any given situation. Yes, although there is language in some of the cases in this circuit that suggests that the privilege, while it certainly could be waived, it's not necessary for an invocation to be made for the courts to review the claim. That yes, the president could disavow the privilege, as President Nixon did when he allowed his staff to testify in front of the Watergate Committee. But that the privilege, in a sense, applies by operation of law, unless it's waived. That's Haldeman and some of the other cases. And then it's not subpoena specific. You're just saying there's a categorical blanket immunity. Well, a privilege slash immunity, both of them. That just exists at all times in all places, and it doesn't have to be invoked. That seems to contradict your position before the district court and that you just reaffirmed to me. I mean, you're bound by what you did in district court, right? Excuse me? You're bound by your position from district. Yes. Okay. So we're dealing now with a privilege belongs to the president to invoke or not. Yes. And has to be invoked on a subpoena specific. That's the event here. There could be other events, but here is a subpoena specific. Right, and what we have to rely on there. He got an email from the committee. I forget the exact time that said, hello, we're going to be shortly sending you a subpoena, telling them what it was about. And three minutes later, he replied, okay, no counsel, executive privilege. Yeah. Did he talk to the president? Is there any evidence in the record that he talked to the president in those three minutes? Not in those three minutes. Is there any evidence in the record that the president was alerted to the existence of this subpoena in those three minutes? Not that's in the record. Okay. Then how was he asserting an executive privilege on a subpoena? Again, if it was presumptive, presumptively. Not you just said, we just went through this. There's no presumption. It's the president's decision to make or not. You agreed with that. You agreed that it has to be subpoena specific. I can't say that. And he invoked it without having talked to the president. Did he talk to anybody? And is there anything in the record that shows he talked to anybody before he sent back that response? No, what's in the record is the prevailing claims of privilege that were floating around the White House at the time. Yeah, that's fine. That's an extraordinary that one wasn't made here. I mean, one was made for him for another committee. They were expressly made. We didn't have this issue in his other cases. They were expressly made for others. And it's, you know, it's almost the silence that speaks volumes. It wasn't here, but I'm coming back to he asserted executive privilege, which is not his to assert. The president gets to assert it. He can communicate it after the president does. It has to be subpoena specific. The only thing in addition that's in the record is the Justin Clark testimony in the grand which suggested that Peter Navarro didn't need a letter because he had his own direct communication line of communication with the president. She didn't use before invoking executive privilege, which he used later. Well, then he had no business to invoke it. OK, but if he used it later, we don't have any. I mean, this was his opportunity at the hearing to make a record of I contacted the president or whomever on X date. And this is specifically what the president said. And it's just amazing the ambiguities that are there. It's very, very vague. Do you have a case where a claim of privilege? With this level of vagueness, lack of specificity of executive privilege has been recognized. What's your best case? Every other one I'm aware of, you got president saying it or a piece of paper. I'm in the White House. We know the president has invoked it. I mean, it's scary for courts to think that we're going to say, oh, he must have meant for executive privilege to apply here. It's not ours to invoke. It's not yours. It's not Dr. Navarro's. It's the president's to invoke. And it's not for courts to say we think he meant it. And so we'll invoke it. That's a terrible separation of powers problem that the lack of evidence in this case has put us into. Yes, if you can't accept that there's a presumptive privilege that could apply. I don't understand how you can have a presumptive privilege and agree that it's subpoena specific, as you said, in district court. I don't know what the difference between a presumptive privilege and a blanket privilege is. Can you tell me what the difference is? Excuse me? What's the difference? Between? Blanket and presumptive. I suppose there isn't one. Well, and you disavowed blanket privilege before the district court. So neither you nor I can rely on that argument in this case. Going back to subpoena specific, how could you even say that all the documents and testimony that would have been requested would have been very specific to any official acts when we're talking about Dr. Navarro's book, his work on the 2020 campaign, his position on 2020 election fraud, you know, some of these appear to be going outside of why an executive privilege would even be asserted.  But again, our view was that if there was an accommodation process in which officials or the president's lawyers in the committee would consider that, they would parse that out the way they did in Myers and Holder. And then they go through whether or not they're going to assert the Fifth Amendment question by question. You show up for a deposition. Your attorney gets to assert certain privileges for it. You know, the client or don't ask that question. I mean, definitely question by question, circumstance by circumstance. Not in these cases, which are interbranch cases. The accommodation process would be something that is offered ahead of time. But also, if you show up, you haven't waived the right for that to continue or for you to challenge any question or document that you don't want to speak to. So I just don't want us to think that there was some error, perhaps, in Congress not engaging in an accommodation process when there still was an opportunity for Dr. Navarro to speak to those issues. Right. And there were other witnesses who did not show up and did not provide documents who were not prosecuted. And that's the discretion of the DOJ in every criminal case, correct? It's the discretion, but it's the reversal or a change in position from 50 years of OLC opinions. So has anybody with as little to show for his assertion that the president had invoked executive privilege, has anybody in that situation with analogous tea leaves about the invocation of executive privilege, has anybody in that situation failed to produce any log of basis for the privilege applying to documents responsive to the subpoena, failed to show up with no notice, and not been prosecuted? Only Mr. Scavino. I thought Scavino had some more of an assertion by the president. No, I thought you argued that in your brief. He had a lawyer's letter. From what lawyer? A Trump lawyer. At the time, not a post hoc letter. I believe it was before. And that's the closest that you have anything else? Anything else close? Mark Meadows provided initially some documents and then declined to provide further documents or go to the deposition. And he was referred for contempt and the U.S. attorney declined prosecution. You didn't express invocation by the president there, did you not? Yes. So the other thing that's historic, in addition to what you said, which is here's a somebody who, you know, served close to the president and was charged with contempt and convicted. It's also historic in the sense that you don't have someone who did what Dr. Navarro did. That you can point to historically. Not in my personal archives. You said that. Yeah. Can I ask you if I'm, are you done? Sorry. I was just interested in the relationship between your failure to accommodate argument and your argument that the privilege is adequately asserted. Are you saying that even if no privilege were adequately asserted, that that's sort of not right because there was a failure of accommodation? So you see that as an independent ground? Yes. I would accept that. So even if there were no privilege or immunity available to Dr. Navarro, you would say he should, we should reverse the conviction or vacate the conviction because Congress violated its constitutional duty of accommodation? And what is that? What would spell out what you envision the committee was required, constitutionally required to do that it didn't do? Well, I guess at a minimum to contact the president's lawyers and begin the process as happened in Myers and Holder. He'd have to contact the White House first to see if there's going to be a claim of privilege. I don't understand. He's not a lawyer. I don't understand. He's a close presidential advisor at a time when this is going on right and left. And apparently he was supposed to know about this presumptive privilege as a non-lawyer that I should think he would know to contact the White House before asserting executive privilege. Can't answer that. If the email and then subpoena from the committee had said, we want to talk to you about your post-service in the administration book and your public statements about the book. That is all we wish to talk to you about. What happens then? That certainly would have narrowed. I'm aware of what my question is doing on the facts. I'm asking you what the legal position is, your legal position is. I think that would have been a more properly cabined request. What is your position on, okay, now I'm going to try this again. I've described to you what the request is and his response is executive privilege. Yes or no? Is he right or wrong? He's a non-lawyer to have said that. As to the document request or as to both? Both. Well, you can answer one at a time. As to the testimony, I think that would still present the problem outlined in the OLC opinion of showing up and having. The OLC opinion did not address the situation at all. The OLC opinion did not address this scenario at all. Public statements, public discussions in a book by someone who is out of office. There is. And a president who's out of office. Right, there is. OLC is not going to help you here. There is still, in Ray Espy, which held that a presidential press statement about the matters that the independent counsel was seeking to subpoena was not a waiver. So there's that. I'm not arguing about waivers here. This is not a waiver case. I'm asking you whether there's any argument for either document, just to avoid the labels, documentary privilege and showing up, the testimonial privilege, showing up privilege. Either one? No. And he didn't, when they said, we also want to talk to you about these things like your book, he did not. I take it he agreed with you. You agree with where he was. He did not at that point say executive privilege. I didn't. I didn't represent him during that period. But yes. Well, you're aware of the record. Yes. Yeah. Okay. So he did never sort of executive privilege or testimonial privilege as to that aspect. They're just back and forth on different things. It seemed like. I see my time is up. Great questions. Thank you. Hang on one second. No, thanks. Thank you. Thank you very much for coming this afternoon. Normally, I would offer you rebuttal, but there's nothing to rebut. Yes, it's been a very strange journey on that front. Thank you. The case is submitted.
judges: Millett; Pillard; Childs